LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs, and
the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOEL FISHER,<br>*on behalf of himself, FLSA Collective Plaintiffs, and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>HUDSON HALL LLC<br>    d/b/a MERCADO LITTLE SPAIN,<br>and THINK FOOD GROUP, LLC,<br><br>Defendants. | Case No.<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trail Demanded |

Plaintiff JOEL FISHER ("Plaintiff FISHER," or "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, HUDSON HALL, LLC d/b/a MERCADO LITTLE SPAIN, and THINK FOOD GROUP, LLC (collectively, "Defendants"), and states as follows:

### INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 et. seq. ("FLSA"), that he and others similarly situated are entitled to recover from

Defendants: (1) unpaid overtime compensation; (2) unpaid wages for off-the-clock work; (3) liquidated damages; and (4) attorneys' fees and costs.

2.      Plaintiff further alleges, pursuant to New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime compensation; (2) unpaid wages for off-the-clock work; (3) statutory penalties; (4) liquidated damages, and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391.

## PARTIES

5.      Plaintiff FISHER is a resident of Kings County, New York.

6.      Defendants operate a restaurant enterprise under the trade name "MERCADO LITTLE SPAIN" at the following address: 10 Hudson Yards, New York, NY 10001.

7.      Defendants operate the following restaurants, bars, and kiosks which serve food and beverages at the above address:

   a. **Restaurants:** Leña, Mar, La Barra, and Spanish Diner (collectively, the "Restaurants");
   b. **Bars:** El Chiringuito, Vinos, Bar Manolo, and Bar Celona (collectively, the "Bars"); and
   c. **Kiosks:** Bocatas & Empanadas, Bravas, Churros, Helados, Jamón & Queso, Paella al Plato, and Pasteles (collectively, the "Kiosks" and with the Restaurants and Bars, the "Locations")

8.      The Restaurants, Bars, and Kiosks at MERCADO LITTLE SPAIN are all located in the same premise, and together comprise a marketplace intended to mirror market halls located

2

throughout Spain. MERCADO LITTLE SPAIN is a Spanish market similar in concept and design to Eataly, which is an Italian style marketplace offering a variety of restaurants, food and beverage counters, bakery, retail items. The Restaurants, Bars, and Kiosks, which comprise the MERCADO LITTLE SPAIN market hall, serve as subsets, divisions, or departments of MERCADO LITTLE SPAIN, and are all commonly owned and operated by Defendants.

9.      The market hall MERCADO LITTLE SPAIN advertises for all its individual Restaurants, Bars, and Kiosks on the following website: http://www.littlespain.com. Attached hereto as **Exhibit A** is the floor layout plan for MERCADO LITTLE SPAIN. *See* **Exhibit A** ("The Mercado (or Market) area of Mercado Little Spain is its very heart—a bustling area inspired by the many historic market halls throughout Spain. Spanish mercados are farm stands, food stalls, bars, and grocery stores, all under one roof.") (emphasis added).

10.      Specifically, the Restaurants, Bars, and Kiosks (collectively the "MERCADO LITTLE SPAIN") operate as a single integrated enterprise and are engaged in related activities, commonly owned by Corporate and Individual Defendants, and have a common business purpose:

a.  The Restaurants, Bars, and Kiosks share similar menus, all serving "Iberian" food items;

b.  All the Restaurants' menus are exhibited when the Website-visitor clicks on each of the Restaurant links on the Website. *See* p. 1-5 of joint webpage MERCADO LITTLE SPAIN, attached hereto as **Exhibit A**;

c.  Employees are interchangeable among the Restaurants, Bars, and Kiosks, and in fact Plaintiff FISHER worked at La Barra and two other locations;

d.   The locations share the same centralized payroll and labor relations departments. When Plaintiff was transferred internally, Defendants paid him through the same corporate entity Defendant HUDSON HALL, LLC;

e.   The Restaurants, Bars, and Kiosks use a central marketing department;

f.   All the Restaurants, Bars and Kiosks offer their venues for private parties and events on one (1) common Website. *See* **Exhibit A** p. 6 & 17-21;

g.   All the Restaurants, Bars and Kiosks share the same social media accounts, using the same brand name and logo. *See* **Exhibit A** p. 20;

h.   All the Restaurants' locations and hours of operation may be accessed from the joint website by clicking on the individual restaurants. *See* **Exhibit A**;

i.   All the Locations share a common "Contact Us" webpage on the Website, where all the Locations share one (1) common inquiry form, phone number, and email address through which questions can be submitted about any of the Locations. *See* **Exhibit** A p. 24;

j.   All the Locations jointly sell one (1) common gift card that is available for use at any of the Locations. *See* **Exhibit A** p. 34-35;

k.   Employment positions for all the Locations are jointly listed and may be applied through the shared Website. *See* **Exhibit A** p. 26;

l.   All the Locations offer reservations on one (1) common Website. *See* **Exhibit A** p. 66;

m.   The Locations regularly share and exchange non-exempt employees, who are interchangeable among the Locations. Defendants require employees to work at locations different from their primary place of employment on special occasions

4

(e.g., parties or private events) when one (1) location is short-staffed. Defendants' standard business practice is to transfer employees between different locations based on their own business needs; and

n.  Employees were regularly required to transport items between Locations, in accordance with the directives of central management.

11.     Corporate Defendant HUDSON HALL LLC d/b/a MERCADO LITTLE SPAIN is a domestic business corporation organized under the laws of New York with its principal place of business at 60 Columbus Circle, New York, NY 10023, and an address for service of process at 80 State Street, Albany, New York, 12207. HUDSON HALL LLC d/b/a MERCADO LITTLE SPAIN is a subsidiary of HUDSON HALL HOLDINGS LLC and Defendant THINK FOOD GROUP, LLC, and owns and operates the Defendants' Leña Restaurant located inside the marketplace MERCADO LITTLE SPAIN.

12.     Corporate Defendant THINK FOOD GROUP, LLC is a foreign business corporation organized under the laws of Delaware, with a principal place of business at 717 D Street, NW 6th Floor, Washington, DC 20004, and an address for service of process at 3411 Silverside Road, Tatnall Building, Suite 104, Wilmington, DE 19810.

13.     THINK FOOD GROUP, along with HUDSON HALL LLC, own and operate the Restaurants, Kiosks and Bars, which comprise the marketplace MERCADO LITTLE SPAIN. Defendants all exercised operational control as it relates to all employees including Plaintiff FISHER, FLSA Collective Plaintiffs, and the Class. Defendants had the power to, and also delegate to managers and supervisors the power to, fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff FISHER, FLSA Collective Plaintiffs, and

the Class. At all times, employees could complain to Defendants directly regarding any of the terms of their employment, and Defendants had the authority to effect any changes to the quality and terms of employees' employment. Specifically, Defendants individually engaged in the following behavior:

a) Corporate Defendant, HUDSON HALL LLC d/b/a MERCADO LITTLE SPAIN is and presents itself as an employer of Plaintiff, FLSA Collective Plaintiffs, and the Class by presenting itself on all of its employees, including Plaintiff's, paystubs;

b) Corporate Defendant, THINK FOOD GROUP, LLC, presents itself as an employer of Plaintiff, FLSA Collective Plaintiffs, and the Class by presenting itself on all of its employees, including Plaintiff's, wage notices;

c) Corporate Defendant, THINK FOOD GROUP, LLC, has hiring and firing power, and applications on MERCADO LITTLE SPAIN's website are redirected to THINK FOOD GROUP, LLC. The career section of Defendants website is attached hereto on page 26 of **Exhibit A**;

d) Corporate Defendant, THINK FOOD GROUP, LLC, drafted and promulgated the job descriptions for Plaintiff, FLSA Collective Plaintiffs, and the Class;

e) Corporate Defendant THINK FOOD GROUP, LLC, operates as the Human Resources Department addressing complaints and/or issues of employees for MERCADO LITTLE SPAIN;

f) Corporate Defendant, THINK FOOD GROUP, LLC, drafted and promulgated the employee handbook of Plaintiff, FLSA Collective Plaintiffs, and the Class; and

6

g) All Corporate Defendants, HUDSON HALL LLC d/b/a MERCADO LITTLE SPAIN and THINK FOOD GROUP, LLC, exercised operational control and all applied for requisite operational licensing. Both Defendants were previously listed on Defendants' liquor license as managers.

14.     At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and the regulations thereunder.

15.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

16.     Although Plaintiff FISHER did not work at all of the Restaurants, Bars, and Kiosks at MERCADO LITTLE SPAIN, each of the Restaurants, Bars, and Kiosks located in MERCADO LITTLE SPAIN are appropriately named in this Complaint through the relevant Corporate Defendants described above. Because the Locations operate as a single integrated enterprise and share identical illegal wage and hour policies, the Restaurants, Bars, Kiosks, and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to the Class Members for whom Plaintiff FISHER seeks to represent.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

17.     Plaintiff FISHER brings claims for relief as a collective action pursuant to FLSA §16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including, but not limited to, cooks, food preparers, cashiers, counter persons, butchers, cleaners, dishwashers, servers, porters, bussers, and food runners) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

18.     At all relevant times, Plaintiff FISHER and the other FLSA Collective Plaintiffs have been and are similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules—all of which have culminated in a willful failure and refusal to pay them for all hours worked and to pay them overtime compensation at the rate of one and one half times the regular rate for work performed in excess of forty (40) hours per week. The claims of Plaintiff FISHER stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

19.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to FLSA §216(b), 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

22.     Plaintiff FISHER brings claims for relief pursuant to the Federal Rule of Civil Procedure ("F.R.C.P.") 23, on behalf of all current and former non-exempt employees, including but not limited to cooks, food preparers, cashiers, counter persons, butchers, cleaners, dishwashers, servers, porters, bussers, and food runners, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint (the "Class" or "Class Members").

23.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses

are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

24.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

25.     Plaintiff FISHER's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subjected to the same corporate practices of Defendants, including (i) mandating unpaid off-the-clock work, (ii) failing to pay overtime premiums, (iii) failing to provide wage statements in compliance with the New York Labor Law, and (iv) failing to provide wage and hour notices upon hiring and as required thereafter, pursuant to the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

26.     Plaintiff FISHER is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff FISHER is represented by attorneys who are experienced and competent in both class action litigation as well as employment litigation and have previously represented plaintiffs in wage and hour cases.

27.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

28.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide

class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

29.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)  Whether Defendants employed Plaintiff and the Class members within the meaning of the New York law;

b)  What were and are the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and the Class members properly;

c)  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and the Class members for their work;

d)  Whether Defendants properly notified Plaintiff and the Class members of their hourly rate and overtime rate;

e)  Whether Defendants required Plaintiff and the Class members to perform unpaid off-the-clock work;

f)  Whether Defendants paid Plaintiff and the Class members the overtime premium at one-and-one-half times their straight time base hourly rates for all hours worked in excess of forty (40) each workweek;

g)  Whether Defendants provided to Plaintiff and the Class members proper wage and hour notices at date of hiring, as required under the New York Labor Law;

h) Whether Defendants provided proper wage statements informing the Plaintiff and the Class members of their proper overtime rate of compensation and other information required to be provided on wage statements, as required under the New York Labor Law; and

i) Whether Defendants provided to Plaintiff and the Class members proper wage statements with each payment of wages, as required under the New York Labor Law.

## STATEMENT OF FACTS

30. On or around January 2018, Plaintiff FISHER was hired by Defendant HUDSON HALL, LLC to work as a Dishwasher and Porter for three of Defendants' Locations, including La Barra, located inside MERCADO LITTLE SPAIN at 10 Hudson Yards, New York, NY 10001. Plaintiff FISHER's employment with Defendants terminated in or about March 2020, due to the impact of COVID-19.

31. From the beginning of his employment to June 2018, Plaintiff FISHER was scheduled to work from 4:00 p.m. to 12:00 a.m. on Mondays, Tuesdays, Wednesdays, Saturdays, and Sundays, which amounted to forty (40) hours per week.

32. From in or about June 2018 to the end of Plaintiff FISHER's employment, Plaintiff FISHER was scheduled to work from 7:00 a.m. to 3:00 p.m. on Mondays, Tuesdays, Wednesdays, Saturdays, and Sundays, which amounted to forty (40) hours per week.

33. All throughout Plaintiff FISHER's employment with Defendants, Plaintiff FISHER was compensated at $15 per hour.

34. During Plaintiff FISHER's employment, FLSA Collective Plaintiffs, and Class members worked similar hours and were paid at similar rates.

35.     Throughout his employment at the Locations, Plaintiff FISHER was expected to clock-out at the end of his scheduled shifts but was instructed by managers to continue performing other work tasks. Plaintiff FISHER was regularly expected to perform these off-the-clock work tasks for five to ten (5-10) minutes after the close of each scheduled shift, approximately once a week. Plaintiff FISHER was not compensated for such off-the-clock work. Similarly, FLSA Collective Plaintiffs and Class members performed off-the-clock work at the end of their scheduled shifts, and were not compensated for this off-the-clock work.

36.     From the start of his employment with Defendant to in or about June 2018, Defendants automatically deducted thirty (30) minutes from Plaintiff FISHER's compensable hours, even though he had to regularly work through his lunch breaks. Similarly, FLSA Collective Plaintiffs and Class members were also deducted thirty (30) minutes from their compensable hours for lunch breaks they were unable to take.

37.     Plaintiff was required to appear at the Little Spain Marketplace long before his scheduled start time, and before he was allowed to clock-in. As part of his expected duties, he was required to change into the company uniform and drop-off gear in the company locker-room.

38.     Moreover, the time to change was further exacerbated by Defendants because they have hundreds of employees, the wait for the locker-room to change was significant, especially as the locker was co-ed, with cameras inside. Those wanting privacy to change had to use the bathroom stalls, of which there were only two, so the wait was then even longer.

39.     As Little Spain Marketplace was a large facility, it took additional time to walk from the locker-room to Plaintiff's workstations, which housed the only machines where employees could clock-in. Between the wait to change into the uniform, the hunting down of an available locker, and the walk over to employees' stations to clock-in, a significant amount of

13

unpaid time accrued. Additionally, managers would often ask for assistance on various tasks as soon as Plaintiff and other employees left the locker room and before they could reach their workstation to clock-in, so this work also went uncompensated. Together, these off-the-clock activities amounted to an average of 15-20 minutes of uncompensated pre-shift work time every day. Collective Plaintiffs and Class Members had the same experience.

40.     At all times relevant to this action, Defendants had a policy to not compensate Plaintiff, FLSA Collective Plaintiffs, and the Class Members for any and all breaks lasting 20 minutes or less.

41.     In addition, at all relevant times Plaintiff, Collective Plaintiffs and Class Members were not compensated for activities that were integral and indispensable to their principal activities at their employment with Defendants. Specifically, Plaintiff, Collective Plaintiffs and Class Members were not compensated for time it took to change before and after their shifts, and for time spent storing clothes in the Defendants locker-room. Defendants required Plaintiff, Collective Plaintiffs and Class Members to spend considerable time dressing and locking away required equipment in the company locker-room before each working day. Defendants required Plaintiff, Collective Plaintiffs and Class Members to use the uniforms provided daily by Defendants. The uniform was for aesthetics, and because employees were in the food-industry, as protective gear to ensure cleanliness of those handling food.

42.     Additionally, the locker-room was on the opposite side of Defendants' Marketplace from Plaintiff, Collective Plaintiffs and Class Members punch in terminal. As Defendants did not compensate Plaintiff, Collective Plaintiffs and Class Members for their time spent changing and storing required equipment, Defendants wrongfully failed to compensate employees from their first to final integral and indispensable activities associated with their employment.

43.     Moreover, Defendants had a system of editing Plaintiff's, Collective Plaintiffs, and Class Members time-sheets thereby reducing their compensable time.

44.     Defendants did not provide Plaintiff FISHER with proper wage notices, as required by the NYLL. Similarly, FLSA Collective Plaintiffs and Class Members were never provided with any wage notices.

45.     Defendants did not provide Plaintiff FISHER with proper wage statements at all relevant times. Similarly, the Class members also did not receive proper wage statements, in violation of the NYLL.

46.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature.  Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiff's interest in ensuring proper pay.  Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380.  Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

47.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class members.  Defendants' conduct actually harmed Plaintiff and Class members.  Defendants' failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest Defendants' calculations, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff and Class

members' rights.  This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law.  Moreover, Defendants failure to provide wage notices allowed Defendants to hide the proper frequency of pay to employees.  Defendants' failure to provide a wage notice to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

48.     Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation.  The failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiff and Class members.  This delayed payment caused Plaintiff to struggle to timely pay bills.  Class members similarly struggle to timely pay debts due to Defendants' continued attempts to hide wrongdoing from employees.

49.     Plaintiff FISHER, FLSA Collective Plaintiffs, and the Class members were required by Defendants to perform unpaid off-the-clock work, resulting in unpaid wages and overtime premium.

50.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff FISHER and Class members, in violation of the NYLL.

51.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage and hour notices to Plaintiff FISHER and Class members, in violation of the NYLL.

Case 1:22-cv-09737-MKV   Document 1   Filed 11/15/22   Page 17 of 20

52.     Plaintiff FISHER retained Lee Litigation Group, PLLC to represent Plaintiff and FLSA Collective Plaintiffs in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

53.     Plaintiff FISHER realleges by reference all allegations in the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

54.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

55.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

56.     At all relevant times, Defendants had gross annual revenues in excess of $500,000.00.

57.     At all relevant times, Defendants had a policy and practice of failing to pay wages for all hours worked.

58.     At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them wages in the lawful amount for all hours worked, including those in excess of forty (40) hours worked each week, due to time-shaving.

59.     Records, if any exist, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective

Plaintiffs are in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, Plaintiff will then seek leave of Court to amend this Complaint to set forth the precise amount due.

60.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

61.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

62.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime premium, and an equal amount as liquidated damages.

63.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to the FLSA.

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

64.     Plaintiff FISHER realleges by reference all allegations in the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

65.     At all relevant times, Plaintiff and the Class members were employed by the Defendants within the meaning of the New York Labor Law §§ 2 and 651.

66.     At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff and the Class Members for all hours worked, including at the statutory rate of time and one-half the regular rate for overtime hours worked, due to Defendants' policy of time-shaving.

67. Defendants willfully violated Plaintiff' and the Class members' rights by refusing to compensate them for off-the-clock hours during which they were required to work.

68. Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

69. Defendants failed to provide a proper wage and hour notice, on the date of hiring and annually, to all non-exempt employees, in direct violation of the New York Labor Law.

70. Defendants failed to provide proper wage statements with every payment issued to Plaintiff and the Class members, as required by New York Labor Law § 195(3).

71. Due to Defendants' New York Labor Law violations, Plaintiff and the Class members are entitled to recover from Defendants their unpaid overtime premium, compensation for unpaid off-the-clock hours worked, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff FISHER, on behalf of himself, FLSA Collective Plaintiffs, and the Class respectfully requests that this Court grant the following relief:

    a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

    b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

    c. An award of unpaid wages, including overtime compensation, due to Defendants' policy of requiring off-the-clock work under the FLSA and NYLL;

    d.   An award of statutory penalties as a result of Defendants' failure to comply with wage notice and wage statement requirements under the NYLL;

    e.   An award of liquidated damages as a result of Defendants' willful failure to pay overtime wages for off-the-clock work, pursuant to the FLSA or NYLL;

    f.   An award of pre-judgment and post-judgment interest, costs, and expenses of this action, together with reasonable attorneys' and expert fees;

    g.   Designation of Plaintiff FISHER as Representative of the FLSA Collective Plaintiffs;

    h.   Designation of this action as a class action pursuant to F.R.C.P. 23;

    i.   Designation of Plaintiff FISHER as Representative of the Class; and

    j.   Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated: November 15, 2022

                               Respectfully submitted,

                               LEE LITIGATION GROUP, PLLC

                               By: _/s/ C.K. Lee_____
                                C.K. Lee (CL 4086)
                                Anne Seelig (AS 3976)
                                148 West 24th Street, 8th Floor
                                New York, NY 10011
                                Tel.: (212) 465-1188
                                Fax: (212) 465-1181
                                *Attorneys for Plaintiff, FLSA*
                                *Collective Plaintiffs, and the Class*